UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
GLOBE WHOLESALE TOBACCO DISTRIBUTORS INC.,

                        Plaintiffs,

           -against-                                   06 Civ. 2865 (LAK)

WORLDWIDE WHOLESALE TRADING INC., et al.,

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

Thomas G. Jackson
PHILLIPS NIZER LLP
*Attorney for Plaintiff*

Jeffrey M. Rubin
RUBIN & SHANG
*Attorney for Defendants*

LEWIS A. KAPLAN, *District Judge.*

          Plaintiff, Globe Wholesale Tobacco Distributors, Inc. ("Globe"), is a wholesale agent

and dealer of tobacco products.  Defendants are (1) Worldwide Wholesale Trading, Inc. ("WWT"),

a competitor of Globe, (2) Worldwide Marketing Partners, LLC ("WMP"), (3) Miguel Mayor, and

(4) Eduardo Mayor.  Globe brings this civil action under the Racketeer Influenced and Corrupt

Organizations Act ("RICO")[1] based on defendants' allegedly unlawful conduct in the wholesale

---

[1]     18 U.S.C. § 1961 *et seq.*

2

purchase and sale of cigarettes and cigars.  Globe seeks also to recover as assignee certain monies allegedly owed to its assignor by WWT.  Defendants move to dismiss all claims.[2]

*Facts*

I.    *The Amended Complaint*

The following facts are taken from the amended complaint[3] and presumed true for purposes of this motion.

Miguel and Eduardo Mayor, father and son, together control and direct the operation of WWT,[4] which has sold cigarettes and cigars to retail dealers at prices lower than their competitors.[5]  The price advantage "has caused Globe and other wholesale dealers to lose business to [WWT] and [WWT] has gained sales and market share at the expense of Globe and other competitors."[6]  According to the complaint, the defendants, along with other wholesale distributors, have acted with the intent to injure Globe and other competitors.[7]

WWT allegedly has obtained its price advantage by: (1) inducing and granting unlawful rebates on the purchase and sale of cigarettes, resulting in below-cost prices in violation

---

[2]    Docket Item 22.

[3]    Docket Item 46 ("Cpt.").

[4]    *Id.* ¶¶ 12-13.

[5]    A specific time period is alleged for two of the three schemes alleged.  *See Id.* ¶¶ 31-32, 43.

[6]    *Id.* ¶¶ 34, 39, 45; s*ee also Id.* ¶¶ 16, 3, 47, 68.

[7]    *Id.* ¶¶ 3, 16.

of Article 20-A of the New York Tax Law,[8] (2) transporting and selling cigarettes bearing counterfeit tax stamps,[9] and (3) purchasing, transporting, and selling untaxed cigars.[10]  In order to conceal these activities, Miguel Mayor, Eduardo Mayor, and WWT caused false state and federal tax returns to be filed,[11] WMP concealed contraband cigarettes and cigars,[12] and revenue was diverted from WWT to WMP, Miguel Mayor, and Eduardo Mayor.[13]

Plaintiff sues under RICO and state law.  As the only alleged basis of federal jurisdiction is the RICO claims, they are the first object of attention.

The first of the RICO claims is asserted against Miguel Mayor and Eduardo Mayor and is based on alleged violations of 18 U.S.C. § 1962(c).[14]  The second is asserted against all defendants and is based on alleged violations of 18 U.S.C. § 1962(a).  As to both claims, the alleged

---

[8]

*Id.* ¶¶ 2(a), 31-33.

[9]

*Id.* ¶¶ 2(b), 38.

[10]

*Id.* ¶¶ 2(c), 43.

[11]

*Id.* ¶ 46.

[12]

*Id.* ¶ 2(d).

[13]

*Id.* ¶ 2(e).

[14]

The complaint is inconsistent in its recital of the first claim.  The heading suggests that it is for violations of Sections 1962(a) *and* (c).  It appears, based on the heading for the second claim, the prayer for relief, and plaintiff's memorandum on this motion, however, that the reference to Section 1962(a) is a typographical error, as the second claim is said to rest on that statute.  *See* Cpt. pp.20, 22-23; Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss [Docket Item 24] ("Opp'n. Mem.") at 2.  Accordingly, the Court treats the first claim as brought only under Section 1962(c).

4

enterprise is WWT, WMP, or both together.[15]  According to the plaintiff, the RICO predicate acts relate to the three alleged means by which defendants obtain their price advantage.

II.     Proceedings

Plaintiff filed the initial complaint on April 12, 2006.[16]  On November 7, 2006, this Court granted the defendants' motion to dismiss and granted leave to amend.[17]  It held that the plaintiff had failed to plead predicate acts, which were several alleged mail and wire fraud violations, with sufficient particularity.

Plaintiff filed the amended complaint on November 28, 2006.  It repeats the same predicate acts of fraud as the initial complaint[18] and asserts three new predicate acts.  The matter is before the Court on defendants' motion to dismiss the amended complaint.

Discussion

I.     Standard

When deciding a motion to dismiss, the Court ordinarily accepts as true all

---

[15]

*Id.* ¶¶ 51, 75.

[16]

Docket Item 1 ("Initial Cpt.").

[17]

Docket Item 19 ("Nov. Order").

[18]

*See* Initial Cpt. ¶¶ 54-58.

well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor.[19]  In

order to survive such a motion, however, "the plaintiff must provide the grounds upon which his

claim rests through factual allegations sufficient 'to raise a right to relief above the speculative

level.'"[20]  In addition, Federal Rule of Civil Procedure 9(b) requires that averments of fraud be made

with particularity. This principle covers RICO predicate acts that sound in fraud.[21]

## II.    The RICO Claims

To state a civil RICO claim, a plaintiff must allege "(1) a violation of the RICO

statute, 18 U.S.C. § 1962; (2) an injury to the business or property; and (3) that the injury was

caused by the violation of Section 1962."[22]  In this case, plaintiff sues on two branches of the RICO

statute, Sections 1962(a) and (c).  Section 1962(a) provides in relevant part that it is unlawful to use

income received from a pattern of racketeering activities to acquire an interest in, establish, or

operate an enterprise.[23]  Section 1962(c) provides in relevant part that it is unlawful "for any person

employed by or associated with any enterprise . . . to conduct or participate in the conduct of such

---

[19]

*Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 14 (2d. Cir. 2001), *cert. denied*, 535 U.S. 1054 (2002).

[20]

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, __ F.3d __, 05-5132-cv, 2007 WL 1989336, *5 (2d Cir. Jul. 11, 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *see also Iqbal v. Hasty*, __ F.3d __, 05-5768-CV (L), 2007 WL 1717803, *11 (2d Cir. June 14, 2007) (declining to limit *Bell Atl.* holding to the antitrust context).

[21]

*First Capital Asset Mgmt., Inc. v. Brickelbush, Inc.*, 150 F.Supp.2d 624, 631 (S.D.N.Y. 2001).

[22]

*De Falco v. Bernas*, 244 F.3d 286, 305 (2d. Cir. 2001).

[23]

18 U.S.C. § 1962(a).

6

enterprise's affairs through a pattern of racketeering activity."[24]   In each case, the plaintiff must

allege (1) an enterprise and (2) a pattern (3) of racketeering activity.  The plaintiff must allege also

that the conduct constituting a RICO violation caused injury to the plaintiff.

        Defendants argue that the complaint is deficient because it does not adequately allege

a pattern of racketeering activity, causation, or the existence of an enterprise.


        A.     *Pattern of Racketeering Activity*

        The plaintiff seeks to allege a pattern of racketeering activity based on eight

categories of predicate acts:

        (1) use of interstate mail and telecommunications facilities to induce and grant

unlawful rebates,[25]

        (2) use of interstate telecommunications facilities to transport and sell cigarettes with

counterfeit tax stamps,[26]

        (3) use of interstate mail and telecommunications facilities to transport and sell

untaxed cigars,[27]

        (4) use of interstate mail and telecommunications facilities to arrange for the

---

[24]

     18 U.S.C. § 1962(c).

[25]

     Cpt. ¶ 58.

[26]

     *Id.* ¶ 59.

[27]

     *Id.* ¶ 63.

purchase, sale, and concealment of contraband cigarettes and untaxed cigars,[28]

(5) use of interstate mail facilities to make fraudulent misrepresentations regarding taxes owed,[29]

(6) transport of counterfeit tax stamps in interstate commerce,[30]

(7) trafficking in cigarettes with tax stamps known to be counterfeit,[31] and

(8) purchase, possession, and sale of cigarettes that did not have tax stamps required by New York law.[32]

Predicate acts one through five allege violations of the mail or wire fraud statutes. In dismissing the initial complaint, the Court held that the complaint does not, in relation to these acts, allege fraud with the particularity required by Rule 9(b).[33] The amended complaint did not alter these allegations.[34] In consequence, these acts will be disregarded when evaluating whether plaintiff suffered an injury caused by defendants' alleged violations of Section 1962.

---

[28] *Id.* ¶ 64.

[29] *Id.* ¶ 65.

[30] *Id.* ¶ 60.

[31] *Id.* ¶ 61.

[32] *Id.* ¶ 62.

[33] Nov. Order at 2.

[34] *Compare* Cpt. ¶¶ 58-59, 63-65, *with* Initial Cpt. ¶¶ 54-58.

8

The newly added allegations of predicate acts rest on violations of 18 U.S.C. §§ 2314, 2320, and 2342.

Section 2314 makes it unlawful, with unlawful or fraudulent intent, to transport tax stamps known to be counterfeit in interstate commerce.[35]  The complaint alleges that WWT transported counterfeit tax stamps interstate and that WWT knew the stamps to be counterfeit,[36] but it does not allege unlawful or fraudulent intent.  Plaintiff therefore arguably has failed adequately to plead a violation of Section 2314, but it is not necessary to decide this question.  The Court assumes, for purposes of this motion that the complaint adequately pleads a Section 2314 violation.

Section 2320 makes it unlawful to intentionally traffic in goods and "knowingly use[] a counterfeit mark on or in connection with such goods."[37]  Section 2320(e) defines "counterfeit mark" as a "spurious mark . . . that is identical with . . . a mark registered . . . on the principal register in the United States Patent and Trademark Office."[38]  The complaint does not suggest that the tax stamp is a "counterfeit mark" as defined by Section 2320. Plaintiff therefore has failed to allege facts sufficient to make out a violation of Section 2320.

Section 2342 makes it unlawful to "knowingly [] ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes or contraband smokeless tobacco."[39] For purposes

---

[35]    18 U.S.C. § 2314.

[36]    Cpt. ¶ 60.

[37]    18 U.S.C. § 2320.

[38]    18 U.S.C. § 2320(e).

[39]    18 U.S.C. § 2342.

of Section 2342, "contraband cigarettes" is defined as a "quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes . . . if the State or local government requires a stamp . . . to be placed on packages . . . of cigarettes to evidence payment of cigarette taxes."[40]  Although plaintiff does not specifically allege a quantity in excess of 10,000 cigarettes, such a quantity reasonably may be inferred from the wholesale nature of WWT's business.  Plaintiff therefore has alleged facts sufficient to find a violation of Section 2342.

In light of the foregoing, arguably the only racketeering acts alleged adequately in the complaint are violations of Sections 2314 and 2342.  In other circumstances, the next question would be whether the complaint adequately alleges a pattern of racketeering activity.  It is unnecessary, however, to address this issue in light of the Court's view of the plaintiff's causation allegations.

B.   Causation

1.   Section 1962(c)

Plaintiff's first claim is that Miguel and Eduardo Mayor violated Section 1962(c) by conducting the affairs of the alleged enterprise through a pattern of racketeering activity.  In view of the foregoing, that pattern consists only of the predicate acts based on 18 U.S.C. §§ 2314 and 2342.

In order to state a claim for relief based on violations of Section 1962(c), a plaintiff must allege that the defendant's violation caused an injury to the plaintiff's business or property.  "[T]he essence of a violation of § 1962(c) is the commission of racketeering acts in connection with

---

[40]   18 U.S.C. § 2341(2).

10

conducting the affairs of an enterprise." Accordingly, a plaintiff may recover under Section 1962(c) for "injury caused by the predicate acts of racketeering themselves"[41] – in this instance, the Section 2314 and 2342 violations.

Plaintiff's theory of causation is that plaintiff was injured as a direct result of WWT's price advantage and that the price advantage was achieved by violating Section 1962(c).[42] Defendants contend that plaintiff's injury is too remote, as the direct cause of injury was the price advantage, not the alleged RICO violation.[43]

The Section 1962(c) causation analysis is controlled by *Anza v. Ideal Steel Supply Corp*.[44]  The plaintiff there alleged that the defendant "harmed [plaintiff] by defrauding the New York Tax authority and using proceeds from the fraud to offer lower prices."[45]  Although the plaintiff alleged that it "suffered its own harms when the [defendant] failed to charge . . . tax," the Court held that proximate cause was not pled sufficiently because the alleged harm was too remote from the conduct constituting the RICO violation.  According to the Court, the plaintiff's harm was caused

---

[41]

  *Ouaknine v. MacFarlane*, 897 F.2d 75, 83 (2d. Cir. 1990) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)); *see also Anza v. Ideal Steel Supply Corp.*, 126 S.Ct. 1991, 1996 (2006).

[42]

  Cpt. ¶¶ 34, 39, 45, 47; Opp'n. Mem. at 14 ("[T]he unlawful sales, facilitated by [WWT's] fraudulent tax schemes and other fraudulent practices, resulted in a direct loss of sales and, consequently, a loss of profits by Globe.").

[43]

  Defendant's Memorandum of Law [Docket Item 22] ("Def. Mem.") at 22-23.

[44]

  126 S.Ct. 1991 (2006).

[45]

  *Id.* at 1996-97.

by "a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)."[46]

In this case, plaintiff has alleged adequately only two predicate acts – transporting counterfeit tax stamps and selling contraband cigarettes.  Plaintiff alleges that it suffered injury caused by the defendants' price advantage,[47] but WWT's price advantage is not conduct constituting a well-pled predicate act.  Plaintiff's alleged harm was caused by a set of actions (offering lower prices) distinct from the alleged RICO violation (transporting counterfeit tax stamps and distributing contraband cigarettes).

Plaintiff's attempts to distinguish *Anza* are not availing.  It argues that *Anza* is distinguishable on two grounds.  First, in *Anza*, unlike in this case, plaintiff argues the defendant "could have lowered its prices for any number of lawful reasons unrelated to its failure to collect and remit sales tax."[48]  But, this is not a persuasive distinction.  Defendants here could have lowered prices for a number of reasons unrelated to the predicate acts.  The complaint alleges a number of acts unrelated to the predicate acts that may have contributed to defendants' lower prices – including defendants' alleged use of rebates in the purchase and sale of cigarettes and defendants' alleged sale of untaxed cigars.

Second, plaintiff argues that in this case, unlike in *Anza*, "it is solely Globe and other cigarette wholesalers which compete with [WWT], not the State or City of New York, that are

---

46

      *Id.* at 1997.

47

      Cpt. ¶¶ 34, 39, 45, 47.

48

      Opp'n. Mem. at 13.

12

injured as a direct and proximate result of [WWT's] ongoing unlawful conduct of selling cigarettes below their presumptive minimum cost."[49]  This distinction is not persuasive because the well-pled predicate acts do harm the City and State of New York.  The harm suffered by plaintiff in this case may be more remote than the harm suffered by the plaintiff in *Anza*.  The plaintiff is one of many competitors harmed by defendants' lower prices.  In contrast, the *Anza* plaintiff was the defendant's "principal competitor," and "[i]ncreases in sales at one of the competitor's stores . . . generally occurs with concomitant decreases in the other's sales."[50]

The conduct constituting the alleged predicate acts is too remote from the harm suffered by the plaintiff.  Plaintiff's RICO claim based on Miguel and Eduardo Mayor's alleged violation of Section 1962(c) fails sufficiently to allege injury caused by the violation.

### 2.      *Section 1962(a)*

Plaintiff's second claim is against all defendants based on alleged violations of Section 1962(a).

In order to state a claim for relief based on violations of Section 1962(a), a plaintiff must allege that the defendant's violation caused an injury to the plaintiff's business or property. "[T]he essence of a violation of § 1962(a) is not commission of predicate acts but investment of racketeering income."  Accordingly, "a plaintiff must allege injury from the defendant's investment

---

[49]      *Id.* at 14.

[50]      *Ideal Steel Supply Corp. v. Anza*, 254 F.Supp.2d 464, 465 (S.D.N.Y. 2003).

of the racketeering income to recover under § 1962(a)."[51]

The complaint alleges that Miguel Mayor and Eduardo Mayor invested racketeering income in an enterprise,[52] but does not allege any investment by WWT or WMP.[53]  The complaint asserts also that "[a]s a direct and proximate result of the investment . . . , Globe has lost and continues to lose a substantial number of its customers and a substantial volume of its wholesale sales . . . ."[54]

In order to recover on a Section 1962(a) theory, plaintiff must "allege a 'use or investment injury' that is distinct from the injuries resulting from predicate acts."[55]  The complaint does not allege any facts to support an inference that the plaintiff suffered an investment injury distinct from any injury suffered as a result of the predicate acts.  Although the complaint asserts that the plaintiff suffered an investment injury, the conclusion is not supported by allegations of fact. The pleading standard is liberal, but "bald assertions and conclusions of law will not suffice."[56]  Moreover, assuming *arguendo* that the complaint adequately alleged an investment injury, the

---

[51]

*Ouaknine v. MacFarlane*, 897 F.2d 75, 83 (2d. Cir. 1990) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496-97 (1985); *OSRecovery, Inc. v. One Groupe Intern., Inc.*, 354 F.Supp.2d 357, 371 (S.D.N.Y. 2005).

[52]

Cpt. ¶¶ 67, 74.

[53]

*See Id*. ¶¶ 71-78.  The Court identified this potential deficiency when it granted defendants' first motion to dismiss.  Nov. Order at 2.

[54]

Cpt. ¶ 69.

[55]

*Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1063 (2d. Cir. 1996), *vacated in part on other grounds*, 525 U.S. 128 (1998).

[56]

*Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir.1996).

14

complaint alleges merely that proceeds from the racketeering activities were reinvested in the enterprise.[57] "Where reinvestment of racketeering proceeds back into the same RICO enterprise is alleged, the injuries stem proximately not from the investment, but from the predicate acts that make up the racketeering activity."[58]

Plaintiff's claim against WWT and WMP for violations of Section 1962(a) fails to allege investment of racketeering income by WWT and WMP.  Plaintiff's claim against Miguel and Eduardo Mayor for violation of Section 1962(a) fails to allege an investment injury distinct from the injury allegedly caused by the predicate acts.

*Conclusion*

For the foregoing reasons, defendants' motion to dismiss the amended complaint [docket item 22] is granted.  The dismissal of the RICO claims is on the merits.  That of the State law claims is for want of subject matter jurisdiction.

SO ORDERED.

Dated:          September 28, 2007

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[57]     Cpt. ¶ 67.

[58]     *Falise v. American Tobacco Co.*, 94 F.Supp.2d 316, 349 (E.D.N.Y. 2000).